Amy L. B. Ginsburg (SBN 275805)
GINSBURG LAW GROUP, P.C.
1012 N. Bethlehem Pike, Suite 103, Box #9
Ambler, PA 19002
Telephone: (855) 978-6564
Facsimile:  (855) 777-0043
Email: efilings@ginsburglawgroup.com

*Of Counsel*
THOMASSON PLLC
402 West Broadway, Suite 950
San Diego, CA 92101
Telephone:  (973) 312-0774
Facsimile:  (973) 559-5579
Email: Amy@Thomassonpllc.com

*Attorneys for Plaintiffs,*
*Michael Barack Michelle Barack*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL BARACK and MICHELLE BARACK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLITZ SERVICES LLC and LOANFI MORTGAGE, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT AND AND BUSINESS & PROFESSIONS CODE §17200, *ET SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiffs, Michael Barack and Michelle Barack, on behalf of themselves and all others similarly situated, through their counsel, and for their Class Action Complaint against Defendants, Blitz Services LLC ("Blitz") and loanFi Mortgage, Inc. ("loanFi"), state:

**INTRODUCTION**

1. Plaintiffs bring this class action complaint for Defendants' violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227, *et seq.* and California Unfair Competition Law (UCL) Cal. Bus. Prof. Code § 17200, *et seq*.

/ / /

**PARTIES**

2. Michael Barack, is a natural person who, at all times relevant to this Complaint, resided in Grapevine, Texas.

3. Michelle Barack, is a natural person who, at all times relevant to this Complaint, resided in Grapevine, Texas.

4. Blitz is a for-profit limited liability company organized under California law.

5. Blitz maintains its principal place of business at 22642 Lambert Street, Suite 407, Lake Forest, California 92630.

6. loanFi is a for-profit corporation organized under Texas law.

7. loanFi maintains its principal place of business at 5049 Edwards Ranch Road, Suite 04-151, Fort Worth, Texas 76109.

8. Whenever it is alleged herein that any Defendant did any act, it is meant that the Defendant performed or participated in the act or that Defendant's officers, agents or employees performed or participated in the act on behalf of and under the authority of a Defendant.

**JURISDICTION AND VENUE**

9. This Court's jurisdiction arises under 47 U.S.C. § 227(g)(2), and 28 U.S.C. §§ 1331 and 1337.

10. Supplemental jurisdiction for Plaintiffs' state law claims arises under 28 U.S.C. § 1367

11. Venue is appropriate in this federal district under 47 U.S.C. § 227(g)(4) and 28 U.S.C. § 1391 because Blitz is an inhabitant of, and transacts business in, this federal judicial district where the violations complained of herein occurred. Additionally, the Defendants regularly transact business within this federal judicial district and, therefore, reside in this federal judicial district within the meaning of 28 U.S.C. § 1391(b) and (c).

/ / /

/ / /

/ / /

/ / /

# BACKGROUND REGARDING CLAIMS

### A. The TCPA.

12. The TCPA regulates, among other things, the use of a prerecorded message to make calls or send prerecorded calls. See 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

13. Specifically, the TCPA prohibits the sending of prerecorded message to wireless numbers in the absence of an emergency or prior express written consent of the called party. *See*, 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

14. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

15. "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

### B. National Do Not Call Registry.

16. The National Do Not Call Registry allows consumers to register their telephone numbers thereby indicating their desire not to receive telephone solicitations at those numbers; and the registration "must be honored indefinitely, or until it is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2).

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### C. California's Unfair Competition Law

18. When enacting the California Unfair Practices Act, the California Legislature determined such laws were necessary to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent, and discriminatory practices by which fair and honest competition is destroyed or prevented. Cal. Bus. & Prof. Code § 17001.

19. Any person who, either as director, officer or agent of any firm or corporation or as agent of any person, violating the California Unfair Practices Act, assists or aids, directly or indirectly, in such violation is responsible therefor equally with the person, firm or corporation for which he acts. Cal. Bus. & Prof. Code § 17095.

20. The remedies or penalties provided by the California Unfair Practices Act are cumulative to each other and to the remedies or penalties available under all other laws unless a statute expressly provides to the contrary. Cal. Bus. & Prof. Code § 17205.

*   *   *   *

21. Plaintiffs, individually and on behalf of all others similarly situated, seek damages, attorney fees, costs, and such other relief, whether equitable or legal in nature, as deemed appropriate by this Court under the TCPA and UCL.

### FACTUAL ALLEGATIONS

22. Blitz is a "person" as that term is defined by 47 U.S.C. § 153(39).

23. loanFi is a "person" as that term is defined by 47 U.S.C. § 153(39).

24. Blitz is a "telemarketer" within the meaning of 47 C.F.R. § 64.1200(f)(12).

25. loanFi is a "telemarketer" within the meaning of 47 C.F.R. § 64.1200(f)(12).

26. Michael Barack's telephone number, XXX-XXX-4850, is registered to a cellular telephone service.

27. Mr. Barack's number ending in 4850 has been registered on the Do Not Call Registry since December 4, 2009.

28. Michelle Barack's telephone number, XXX-XXX-8532, is registered to a cellular telephone service.

29. Mrs. Barack's number ending in 8532 has been registered on the Do Not Call Registry since June 17, 2018.

30. Plaintiffs have never sought or solicited information regarding Defendants' services prior to receiving the prerecorded calls at issue.

31. The Defendants have never had a "established business relationship" with Plaintiffs within the meaning of 47 C.F.R. § 64.1200(f)(5).

32. Plaintiffs did not consent to receiving any communications from Defendants.

33. On November 23, 2021 and February 9, 2022, Mr. Barack received the following *identical* prerecorded message from Defendants on his cellular telephone ending in 4850:

> Hey this is Brian. I know you get a ton of these calls, but I have in my records that we had spoken before about your mortgage and I wanted to reach out again. We have the absolute lowest interest rates in the country. We can beat anyone out there so we can definitely improve your mortgage payment. We can even help people who have no documentable income and who have less than perfect credit. I would really really love to talk to you as soon as possible and save you as much money as we can so we can lock you in right away. Thanks a lot.

34. On November 23, 2021 and February 9, 2022, Mr. Barack received the following *identical* prerecorded message from Defendants on his cellular telephone ending in 4850:

> Hey this is Brian. I know you get a ton of these calls, but I have in my records that we had spoken before about your mortgage and I wanted to reach out again. We have the absolute lowest interest rates in the country. We can beat anyone out there so we can definitely improve your mortgage payment. We can even help people who have no documentable income and who have less than perfect credit. I would really really love to talk to you as soon as possible and save you as much money as we can so we can lock you in right away. Thanks a lot.

35. The prerecorded messages Mr. and Mrs. Barack received are identical.

36. The prerecorded messages Mr. and Mrs. Barack received neither identified "Brian," the company for which "Brian" worked, nor the company on whose behalf "Brian" was soliciting customers.

37. After receiving the initial prerecorded message, Mr. Barack dialed the number on his caller ID and, as a result of that call, he learned that Blitz was initiating the telephone calls, and leaving the prerecorded message, on behalf of loanFi.

38. The Defendants' initiated calls to Plaintiffs, and transmitted prerecorded messages for the purpose of encouraging the purchase of loanFi's mortgage goods and services.

39. The Defendants' telephone calls and prerecorded messages, as alleged herein, constitutes "telemarketing" within the meaning of 47 C.F.R. § 64.1200(f)(13).

## LOANFI'S LIABILITY FOR BLITZ'S TELEMARKETING CALLS

40. At all times relevant to this complaint, there existed an agency relationship between Blitz and loanFi, with Blitz acting as loanFi's agent.

41. At all times relevant to this complaint, loanFi gave its apparent, if not actual, authority to Blitz to initiate the offending telephone calls, and leaving the offending prerecorded message, on loanFi's behalf for the Plaintiff and putative class members.

42. At all times relevant to this complaint, acted within the scope and authority of its agency relationship with loanFi by initiating the offending telephone calls, and leaving the offending prerecorded message, on behalf of loanFi for the Plaintiff and putative class members.

43. Defendants financially benefitted from their policy and practice of initiating the offending telephone calls, and leaving the offending prerecorded message complained of herein.

44. For more than a quarter century the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

45. On May 9, 2013, the FCC issued a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."

46. The FCC's ruling warned sellers, like loanFi, that they may not avoid liability by outsourcing their telemarketing whims to third parties:

> Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located

> outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted). "Sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *Id.*

47. Even absent evidence of a formal contractual relationship between a seller and telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

48. Blitz was contractually required to promote loanFi products in telemarketing calls to generate new paying customers, and did so, as they did with the Plaintiffs.

49. loanFi was knowingly and actively accepting the business that originated through Defendants' illegal telemarketing calls for loanFi's mortgage services.

50. loanFi maintained interim control over Blitz's actions.

51. For example, loanFi had absolute control over whether, and under what circumstances, it would accept a customer.

52. loanFi had day-to-day control over Blitz's actions, including the ability to prohibit Blitz from using prerecorded methodology to contact potential loanFi customers.

53. loanFi failed to instruct Blitz, and as a result, is liable for Blitz's conduct.

54. The May 2013 FCC Ruling allows called parties to obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Evidence of circumstances pointing to a telemarketer's apparent authority "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

/ / /

/ / /

## CLASS ALLEGATIONS

55. Plaintiffs bring this action on behalf of themselves and the following classes ("Classes") under Federal Rule of Civil Procedure 23.

56. *Class Definitions*. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

  (a) **Prerecorded Message Class:** All persons within the United States to whom: *(i)* Blitz Services LLC placed a prerecorded telemarketing message call *(ii)* to a residential landline or cellular telephone number without prior express written consent signed by the called party; and *(iii)* where the last call was made no earlier than the date that is four years prior to the filing of this action.

  (b) **Failure to Identify Class:** All persons within the United States to whom: *(i)* Blitz Services LLC placed a prerecorded telemarketing message call *(ii)* to a residential landline or cellular telephone number without prior express written consent signed by the called party; *(iii)* without clearly stating at the beginning of the message the identity of the business, individual, or other entity that is responsible for initiating the call; and *(iv)* where the last call was made no earlier than the date that is four years prior to the filing of this action.

  (c) **National Do Not Call Registry Class**: All persons within the United States to whom: *(i)* Blitz Services LLC placed at least two telephone solicitation calls during a 12-month period; *(ii)* for telemarketing purposes on behalf of loanFi Mortgage, Inc.; *(iii)* to a residential landline or cellular telephone number registered on the do-not-call list for at least 30 days prior to the first call; *(iv)* prior express written consent signed by the called party authorizing the calls; and *(v)* where the last call was made no earlier than the date that is four years prior to the filing of this action.

57. Excluded from the Classes are the Plaintiffs, Defendants, and their respective counsel, any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

/ / /

58. **Class Claims.** The Class claims include all claims each Class member may have for a violation of the TCPA or UCL arising from Defendants' use of a prerecorded message and placement of calls to telephone numbers registered on the National Do Not Call Registry. Plaintiffs and all members of the Classes have been harmed by Defendants' acts, including, but not limited to, the invasion of their privacy, annoyance, waste of time, loss of their cell phone battery and cost to replenish it, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

59. **Numerosity.** The Class is so numerous and so geographically disbursed that joinder of their claims is impractical. There are at least 40 members in each of the Classes.

60. The Classes are identifiable through the Defendants' business records, dialer records, other phone records, and phone number databases.

61. **Commonality.** Common questions of law and fact exist as to members of the Classes; those common principal issues include whether: *(i)* Blitz's placement of telemarketing calls to a Class member's residential landline or cellular telephone number, which was registered on the do-not-call list at least 30 days prior to the first call, and without having the called-party's prior express without prior written consent, violates the TCPA; *(ii)* Blitz's placement of prerecorded telemarketing message calls to a Class member's residential landline or cellular telephone number without having the called-party's prior express without prior written consent, which failed to clearly state at the beginning of the message the identity of the business, individual, or other entity that is responsible for initiating the call, violates the TCPA; *(iv)* Defendants' TCPA violations warrant an award of treble damages; and *(v)* Defendants' systemic TCPA violations constitute a UCL violation.

62. **Typicality.** Plaintiffs' claims are typical of each Class member because those claims arise from Defendants' standardized course of conduct alleged herein.

63. **Adequacy.** Plaintiffs will fairly and adequately protect Class members' interests because Plaintiffs' interests are not averse to the absent Class members and because they committed to vigorously litigating this matter. Plaintiffs retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions.

64. This action may be maintained under Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to members of the Classes predominate over any questions affecting any individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The individual joinder of all Class members is impracticable, class action treatment will permit a large number of similarly situated persons to efficiently prosecute their common claims in a single forum without unnecessary duplication of effort and expense that individual actions engender, an important public interest is served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

65. This action may also be maintained under Fed. R. Civ. P. 23(b)(2) because the injunctive relief is available under 47 U.S. Code § 227(c)(5)(A) and Defendants have each acted or refused to act on grounds that apply generally to the Classes, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the each of the Classes as a whole.

## FIRST CAUSE OF ACTION
**Violations of the TCPA's National Do-Not-Call Registry Provisions**
**47 U.S.C. 227(c) and 47 C.F.R. § 64.1200(c)(2)**

66. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

67. Defendants each violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by Blitz's initiating multiple solicitation calls on behalf of loanFi within a 12-month period to the residential and cellular telephone numbers belonging to Plaintiffs and putative class members despite their registration on the National Do Not Call Registry and without having their signed, written prior express invitation or permission.

68. The Defendants' TCPA violations were negligent and/or willful.

69. The TCPA provides a private right of action for these claims under 47 U.S.C. § 227(c)(5).

/ / /

/ / /

**SECOND CAUSE OF ACTION**
**Violations of the TCPA's National Do-Not-Call Registry Provisions**
**47 U.S.C. 227(b)(1) and 47 C.F.R. § 64.1200(b)**

70. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

71. Defendants each violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(b) by placing prerecorded voice telephone message calls to the residential and cellular telephone numbers belonging to Plaintiffs and putative class members which:

(a) Fail to clearly state the identity of the business, individual, or other entity that is responsible for initiating the call;

(b) Fail to clearly state the identity of the business who was responsible for initiating the calls, using the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority); and

(c) Fail to provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the caller's required identification.

72. The Defendants' TCPA violations were negligent and/or willful.

73. The TCPA provides a private right of action for these claims under 47 U.S.C. § 227(c)(5).

**THIRD CAUSE OF ACTION**
**Violation of the Unfair Competition Law**
**Cal. Bus & Prof Code §17200, *et seq*.**

74. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

75. Defendants' illegal conduct complained of herein including, but not limited to, instructions and control over their respective employees to violate the TCPA emanated from California where Blitz is headquartered, has offices, and does substantial business (including its

business with loanFi).

76. Defendants committed acts of unfair competition as defined by the UCL and as alleged in the preceding paragraphs and, by engaging in the acts, practices, and omissions described herein, they each committed unlawful, unfair, and fraudulent business acts and practices within the meaning of the UCL.

77. The Plaintiffs, and putative Class members they seek to represent, suffered harm and lost money as a proximate result of Defendants' unlawful and continuing TCPA violations.

78. The Defendants' respective unlawful business acts and practices complained of herein deceived and harmed the Plaintiffs and putative members of the proposed Classes and, thus, constitute "fraudulent" acts and practices within the meaning of the UCL.

79. The Defendants' respective unlawful acts and practices, as alleged herein, violate the TCPA and, therefore, constitute unlawful acts and practices within the meaning of the UCL.

80. The Defendants' respective unlawful conduct, as alleged herein, violate the policy and spirit of the TCPA, and other consumer protection laws and significantly harm consumers.

81. The Defendants' respective unlawful acts and practices are unethical, oppressive, unscrupulous, and substantially injurious to consumers and honest business who do not violate the TCPA as a means to increase their profits and gain an unfair advantage over their competitors.

82. The harm to Plaintiffs, and members of the general public, substantially outweighs any benefits of Defendants' unlawful conduct and, therefore, Defendants' respective unlawful acts and practices constitute "unfair" business acts and practices within the meaning of the UCL.

83. As a result of Defendants' conduct, the Plaintiffs and putative Classes they seek to represent were harmed and, therefore, they seek restitution and/or disgorgement of Defendants' ill-gotten profits and any further relief this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of their proposed Classes, pray for the following relief:

    A.    Certification of the proposed Classes;

    B.    Appointment of Plaintiffs as representative of the Classes;

| | | |
|---|---|---|
| 1 | C. | Appointment of the undersigned counsel as counsel for the Classes; |
| 2 | D. | A declaration that the Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA; |
| 5 | E. | An order enjoining each Defendant and/or their respective affiliates, agents, and/or other related entities, as provided by law, from using pre-recorded messages; |
| 8 | F. | An award of statutory damages to the Plaintiffs and Classes as allowed by law; |
| 10 | G. | Awarding Plaintiff and the Classes restitution, damages (including statutory and punitive damages as applicable), and disgorgement in amounts according to proof at trial, including an award of pre- and post-judgment interest, to the extent allowable; |
| 14 | H. | Injunctive relief prohibiting Defendants from committing further UCL violations; |
| 16 | I. | Leave to amend this Complaint to conform to the evidence presented at trial; and |
| 18 | J. | Orders granting such other and further relief as the Court deems necessary, just, and proper. |

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Dated: May 4, 2022

**GINSBURG LAW GROUP, P.C.**
**THOMASSON, PLLC**
*Attorneys for Plaintiffs, Michael Barack Michelle Barack*

By: _____s/ Amy L. B. Ginsburg_____
AMY L. B. GINSBURG